1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2
    ------------------------------x
3                                         17-CV-2829(CBA)
    ARCH INSURANCE COMPANY, et
4   al.,
                                          United States Courthouse
5            Plaintiff,                   Brooklyn, New York

6            – versus –                   January 28, 2019
                                          3:00 p.m.
7   SKY MATERIALS CORP.,

8            Defendant.

9   ------------------------------x

10       TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
                 BEFORE THE HONORABLE CAROL B. AMON
11                 UNITED STATES DISTRICT JUDGE

12
    APPEARANCES
13
    Attorney for Plaintiff:  HINSHAW
14                           800 Third Avenue
                             New York, New York 10022
15                           BY:  MATTHEW C. FERLAZZO, ESQ.
                                  KYLE MEDLEY, ESQ.
16

17  Attorney for Defendant:  COLE SCHOTZ
                             1325 Avenue of the Americas
18                           New York, New York 10019
                             BY:  BRIAN L. GARDNER, ESQ.
19                                JED M. WEISS, ESQ.

20
    Court Reporter:          RIVKA TEICH CSR, RPR, RMR, FCRR
21                           Phone:  718-613-2268
                             Email:  RivkaTeich@gmail.com
22
    Proceedings recorded by mechanical stenography.  Transcript
23  produced by computer-aided transcription.

24

25

PREMOTION CONFERENCE

1          (In open court.)

2          THE COURT:  17-CV-2829, Arch Insurance versus Sky

3    Materials, for premotion conference.

4          Could the parties state their appearances, please,

5    first for plaintiff.

6          MR. FELAZZO:  Good afternoon, your Honor, Matthew

7    Ferlazzo with Henshaw, and also with me is Kyle Medley, for

8    plaintiffs.

9          THE COURT:  Good afternoon.

10          MR. GARDNER:  Good afternoon, your Honor, Brian

11    Gardner of Cole Schotz for the defendants, and also with me is

12    Jed Weiss of my office.

13          THE COURT:  Good afternoon.  You all could be

14    seated.  There was an amended complaint here and in answer to

15    that there were affirmative defenses cited that you're seeking

16    now to dismiss.  That's what the conference is about; is that

17    correct?

18          MR. FELAZZO:  Yes, your Honor.  The amended

19    complaint essentially made the claims at issue only about the

20    workers' comp policy, it dropped the claims related to the

21    side agreement.  The new defenses that are alleged in the

22    answer --

23          THE COURT:  It is only the workers' comp policy now.

24          MR. FELAZZO:  Also a commercial auto policy, your

25    Honor, but a small portion of.  The main bulk of what to do is

PREMOTION CONFERENCE

1    pursuant to the workers' comp policy, that is the only

2    contract that we're seeking the damages at issue.

3              THE COURT:  How are the damages calculated that you

4    seek in that action?  Isn't it that you seek them with

5    reference to what the LSPA requires?

6              MR. FELAZZO:  No, your Honor.  The workers' comp

7    policy itself has an endorsement to it that requires that Sky

8    pay a $500,000 deductible as for each claim.  It also has as

9    part of that same endorsement, a provision that Sky provide

10   security to secure its payment obligations.

11             We are no longer referencing the collateral

12   provisions in the LSPA.  We are solely relying on the workers'

13   comp policy provisions concerning the deductible and

14   collateral.

15             THE COURT:  You come up with the same number?

16             MR. FELAZZO:  Yes.  The collateral is calculated

17   based on the amount of losses that have been incurred plus an

18   estimate for future losses.  The amount of losses that have

19   been incurred are not dependent on which contract we're

20   seeking the damages pursuant to.  The amount of losses --

21             THE COURT:  When you talk about losses, what kind of

22   losses are you spoking about?

23             MR. FELAZZO:  Workers' comp claim payments.  Claim

24   payments to reimburse medical providers who have provided

25   medical to injured workers.

PREMOTION CONFERENCE

1      THE COURT:  Why are you entitled to get that money

2  back, because they have never paid the premiums?

3      MR. FELAZZO:  Because the workers' comp policy

4  includes a $500,000 deductible for each claim, Sky will pay,

5  will reimburse, Arch for up to the first $500,000 spent on

6  each claim.  So for the medical costs, the reimbursement --

7      THE COURT:  You're reimbursed for more than that.

8      MR. FELAZZO:  We cannot seek for reimbursement for

9  more than that per claim.

10     In this case I believe there has been a total of

11 somewhere of 15 or 16 workers' comp claims.  Each of those

12 claims entitle us to up to $500,000 in reimbursement.  So the

13 total we're seeking as of the most recent numbers we had,

14 1.2 million or so in all amounts we have paid for those

15 injured worker, spread amongst those 16 or so claims.

16     Again, the obligation to pay that is found

17 independently in the workers' comp policy absent whatever is

18 also said in the Loss Sensitive Payment Agreement.  So the

19 workers' comp policy is now the sole basis for the claims in

20 the first amended complaint.

21     THE COURT:  So you're saying, any affirmative

22 defenses regarding the other agreement are irrelevant.

23     MR. FELAZZO:  Yes, your Honor.  Essentially, by

24 asserting what Sky --

25     THE COURT:  How are you staying in the case at this

Rivka Teich CSR, RPR, RMR, FCRR
Official Court Reporter

PREMOTION CONFERENCE

1    point in time?

2            MR. FELAZZO:  I believe Sky has asked some discovery

3    responses about them; we objected to them.  At some point we

4    may get push back about those.  We'll have to deal with that

5    eventually as the case goes down the road when we get to

6    summary judgment, we'll have to spend time briefing your Honor

7    that the LSPA was an agreement that needed to be filed with

8    the insurance department.  That's something that we and Sky

9    disagree on, those kind of issues to be taken out of the case

10   both for either discovery purposes or future summary judgment

11   purposes.

12           For streamlining the case, the reason why we dropped

13   the LSPA claims from the matter, when Sky raised this issue of

14   the potential illegality, we realized we can streamline the

15   case, go straight to the workers' comp policy.  By bringing

16   those in through the defenses we're not streamlining the case

17   any more, we're complicating it.

18           THE COURT:  How is it complicating it?

19           MR. FELAZZO:  It's bringing back in the case the

20   arguments of is the LSPA an agreement that should have been

21   filed with the insurance department, does that --

22           THE COURT:  What you're saying is your decision to

23   drop it from your complaint should have ended the matter and

24   there is no need to address.  It was your effort to make the

25   case less complicated and now -- and these were claims that

PREMOTION CONFERENCE

1    were not in the first in response to the first complaint?

2              MR. FELAZZO:  No, they were not.  These LSPA

3    offenses were not in the first answer to the original

4    complaint.

5              THE COURT:  Mr. Gardener.

6              MR. GARDNER:  Yes, your Honor.

7              THE COURT:  Why weren't you in when that agreement

8    was front and center of the first complaint, why weren't these

9    affirmative defenses raised at that time?

10             MR. GARDNER:  There were some affirmative defenses

11   in that that touched on the subject and then it became clear

12   that they may not have filed this document, and the LSPA may

13   be contrary to the insurance requirement notice of New York

14   state.

15             That's when we started contacting counsel.  We went

16   to the settlement conference.  We raised this issue as to the

17   settlement issues.  We said regarding the LSPA, it may not

18   have been filed, we're presuming it was.  This is a joint

19   document with the insurance agreement, you may have a greater

20   difficulty than the calculations in the prior motions here

21   than before.  It was in response to those conversations in

22   writing and orally that counsel then notified us that he was

23   withdrawing the LSPA claims.  Still there has been no

24   representation whether it was filed or not.  But it's

25   certainly --

PREMOTION CONFERENCE

1          THE COURT:  If they are not making any claims

2     regarding it or not claiming any rights under it, why do you

3     need to raise affirmative defenses with regard to it?

4          MR. GARDNER:  It's the same issue, your Honor.  It's

5     not streamlining anything.  Because the issues that they are

6     saying they are trying to avoid having to raise in the summary

7     judgment motion they would be raising now on the motion to

8     your Honor.  So those issues are going to be presented.

9          The second is when counsel said it's not, counsel

10    focused on the security, the repayment claim, the $500,000,

11    the collateral claim, he avoided, which seeks $1,396,749.

12          That was in the original complaint.  They say in the

13    original claim that's based on the LSPA.  Coincidentally they

14    are saying -- and the only document that talks about how you

15    calculate the collateral is in the LSPA.  I think that's what

16    your Honor was touching on.  They are saying coincidentally in

17    the amended complaint, without reference to the LSPA, they get

18    to the same exact precise dollar amount in the amended

19    complaint.

20          Your Honor, that is strange credibility.  But it

21    also shows, at a minimum, a factual question of whether they

22    are basing their calculations that are present before the

23    Court now on this LSPA.  We should be able to explore that --

24          THE COURT:  Assuming they would enter into a

25    stipulation that they are not going to wrong the LSPA, not

8

PREMOTION CONFERENCE

1  going to use it to prove any damages at trial, why wouldn't

2  that end the matter?

3        MR. GARDNER:  Because the reality is, Judge, they

4  are using it.  There is no way -- the agreement itself says

5  just there will be an amount.  Then it says the LSPA is how

6  you calculate that amount.  Now they are saying, we

7  calculated -- they can't deny this is calculated pursuant to

8  the LSPA.

9        THE COURT:  The collateral.

10        MR. GARDNER:  Yes.  No way to end with the $749

11  without utilizing the calculations in the LSPA.  Just on that

12  basis they are utilizing an insurance document that is -- part

13  of the proper insurance document in an improper way.

14        As to the 11th affirmative defense, Judge, they are

15  intertwined.  If one referred to another and explains the

16  other, these are two documents together.  It's nice for them

17  now to say forget about the one document, that may not be

18  legally enforceable or binding under New York state law, so

19  we'll just forget about that and we'll go with this one,

20  singular document.

21        THE COURT:  Are you saying in your view they don't

22  have a right to recover under one document, it has to be both

23  documents, that's why you have to challenge the second

24  document?

25        MR. GARDNER:  Yes, Judge.  The state insurance

PREMOTION CONFERENCE

1    laws -- when you have -- they want to see every document, they

2    want to see how the insurance is being calculated, the New

3    York State Insurance Department.  So when a company here, and

4    to my surprise it appears this is what they did, I assume Arch

5    is a larger company, I have only seen this with a smaller

6    out-of-state document.  When Arch files one document with the

7    state insurance fund, this is our insurance policy, can you

8    approve it, they approve it.  Then they have a side document

9    they never showed to the state insurance company that modified

10   and interacts with and is signed as a condition of the one

11   insurance policy, then they are both impacted.

12        THE COURT:  Why is it signed as a condition of?

13   Does the document that is the subject of the complaint make

14   reference to this document?

15        MR. GARDNER:  The LSPA document, the one that they

16   are now taking out makes reference and says this is how you're

17   going to calculate these issues in the insurance agreement in

18   the policy itself.

19        THE COURT:  The insurance agreement doesn't make

20   reference to the LSPA, it's the other way, right?

21        MR. GARDNER:  I'm not sure if the insurance

22   agreement itself makes reference or just when you're entering

23   into the documents in order to get the insurance you have to

24   sign the LSPA, which modifies the conditions and explains the

25   insurance document.  It's kind of like the LSPA incorporates

PREMOTION CONFERENCE

1   by reference the insurance document, this is how you're going

2   to -- not kind of, it is -- this is how you calculate these

3   items in the insurance document.  That's precisely the problem

4   that the New York State Insurance Department tries to avoid.

5           THE COURT:  What is your argument if this LSPA

6   agreement is not validly done, it undermines the other policy

7   as well?

8           MR. GARDNER:  It does, to enforce the other policy.

9           THE COURT:  The workers' comp policy?

10          MR. GARDNER:  It does, yes.  Counsel is saying we

11  want to avoid that issue.  Of course they do, because the

12  State Insurance Law is strict in New York on insurance

13  companies.  If you want an insurance agreement, we have to see

14  those agreements.  It's not acceptable to show them one

15  agreement and then have the pricing, the security, and the

16  collateral for that agreement done by an addendum or side

17  agreement.  That's specifically what the New York State

18  insurance company says you can't do.

19          THE COURT:  What happened at your settlement

20  conference, out of interest?

21          MR. GARDNER:  I didn't get a -- the demand I

22  received, your Honor, was every possible, fathomable penny

23  under their complaint, that was the only demand we received.

24  I thought we were going to have a conversation with the

25  deductible issues, right, not the collateral, not the other

PREMOTION CONFERENCE

1    items.  We did not.

2            It's particularly hard to settle this, your Honor.

3    We have our counter claims, where for the non-investigation

4    and likewise all the settlements that they did, most of these

5    settlements were at just under $500,000, 494, 496, no

6    investigation.  So we have a counter claim there should be a

7    repayment.

8            I think our counter claim exceeds the amount of

9    money that they could legitimately claim, putting aside the

10   LSPA of the $2.2 million that they expended.  Our counter

11   claim is greater than that.  We didn't get very far.

12           MR. FELAZZO:  Your Honor, may I quickly address the

13   settlement conference issue.

14           Not to put the numbers out there, but how we ended

15   was Magistrate Judge Bloom had proposed a settlement bracket.

16   Arch said it was willing to come within that bracket, and Sky

17   said they were not.  That's how we wound up ending the

18   settlement.

19           THE COURT:  It was a settlement with money going to

20   your client?

21           MR. FELAZZO:  Yes, your Honor.  And then as I said,

22   Judge Bloom proposed a bracket which Sky would come to a

23   certain amount, and Arch would come to a certain amount, and

24   negotiate within that range.  Arch was willing to do that; Sky

25   was not.

PREMOTION CONFERENCE

1          MR. GARDNER:  Your Honor, the bracket was quite

2     large, starting with an amount that was not acceptable to us

3     but the --

4          THE COURT:  Is that a jury case, assuming it goes to

5     trial?

6          MR. FELAZZO:  We have not demanded a jury trial.  I

7     believe Sky did in its answer.

8          MR. GARDNER:  I think if this went to trial it

9     should not be a jury trial, Judge, I would imagine, if the

10    Court would entertain a bench trial.

11         THE COURT:  I shouldn't discuss settlement with you

12    any further if that's the case.  If it were a jury trial, I'd

13    talk to you more about it; if it's a non-jury trial, maybe

14    not.

15         Is there any percentage in going back to Judge

16    Bloom?

17         MR. GARDNER:  I actually did not feel there was,

18    your Honor.  I think we had some conversations between

19    ourselves.  But I think Judge Bloom, we got to an impasse, she

20    chose a number that was quite a wide range.  I understand why,

21    to see if the parties can get within that big, big range and

22    then try to talk about it.  But I just felt that it really was

23    going no where.

24         Plus, when we have these LSPA issues, at that point

25    in the settlement agreement I was raising these issues and it

PREMOTION CONFERENCE

1   came to my attention that this may be an issue.  I raised the

2   issue, I asked counsel to get back to us on whether the LSPA

3   was filed and whether they can consider it an appropriate

4   document under the state insurance laws.  Their response was,

5   we're withdrawing all claims as to the LSPA.  Of course the

6   numbers stayed the same, even though they were entirely

7   dependent on those numbers for the first complaint.  I think

8   we're going to need to address those issues.

9          I would propose to the Court, no prejudice to them,

10  to address them in a summary judgment action.  There are

11  questions on the fact as to whether or not they are

12  calculating these items by use of the LSPA, and what the LSPA

13  was, and why it was modifying the original insurance product.

14         I think we have to ask those questions before

15  summary judgment and then have everything to you, your Honor,

16  to review.

17         THE COURT:  How much discovery is involved on this

18  issue?

19         MR. GARDNER:  Not a great deal.  I think most

20  document discovery has largely occurred.  We need some

21  depositions.

22         MR. FELAZZO:  Your Honor, to the greatest extent, I

23  think this is a legal issue as to whether the documents should

24  have been filed or not, whether there are modifications or

25  not.  In the end -- so we may actually have, depending on how

PREMOTION CONFERENCE

1    much Sky pushes for discovery, we may have a dispute about,

2    about keeping the claims in the case.

3            MR. GARDNER:  The factual issues about whether or

4    not they -- for example, did they require this as part of the

5    original agreement, did they draft it, who drafted it, what is

6    it modifying.

7            THE COURT:  How much discovery is involved on it,

8    such that we could at least have the issues out there.  If

9    it's not, just address it on -- you're going to move for

10   summary judgment, I take it?

11           MR. FELAZZO:  Yes, your Honor.

12           THE COURT:  Why don't you just wait on this and do

13   it in the context of summary judgment.  I'm not  going to tell

14   you you can't make the motion, but it seems like it would make

15   much more sense to do that.

16           MR. FELAZZO:  I understand, your Honor.  But I do

17   feel as we move forward this is going to become a discovery

18   issue.

19           THE COURT:  How big a discovery issue is it going to

20   be?

21           MR. FELAZZO:  Somewhat difficult to predict with

22   certainly.  I know a number of Sky document demands had

23   information about the LSPA.  We have objected to a number of

24   those.  If they are going to get into examining witnesses

25   about the meaning of the different documents, that's stuff

PREMOTION CONFERENCE

1    that we really don't need to get into at this point.

2              What they are essentially asking is they want to

3    leave out there an issue where the Court will be asked to

4    basically void the workers' comp policy, which is something

5    you can't do under New York law.  It's something that could be

6    taken care of right now and addressed, and leave for summary

7    judgment the real issues which are the amounts that are at

8    issue and Sky's counter claims in the case.

9              MR. GARDNER:  We're not asking to void it, we're

10   saying that these claims are unenforceable against my client

11   because the LSPA.  That's a different issue than avoiding the

12   insurance itself.

13             THE COURT:  Why would they be completely

14   unenforceable?

15             MR. GARDNER:  In order to prevent this conduct.  If

16   insurance companies are going to enter into insurance products

17   with companies, with clients, and then have side agreements

18   that they are hiding from the state insurance fund.

19             THE COURT:  This was a side agreement with your

20   client?

21             MR. GARDNER:  Yes, but the state insurance fund

22   regulates the insurance companies.  It says, if you want to

23   enforce these policies, meaning other collection events

24   against your clients, then you must show us the insurance

25   documents that you're enforcing.  You have to do that.  It's

PREMOTION CONFERENCE

1    not a hard -- they are showing them one document.

2              THE COURT:  Therefore, if they show the one document

3    and not the other they can make no claims under the first

4    document?

5              MR. GARDNER:  If their claim is that premiums are

6    owed, then yes, your Honor.  There isn't a lot of litigation

7    most of it is out of state.  California has run into this

8    problem.  New York state insurance department has opined on

9    the issue, I believe, but there aren't a lot of cases in

10   federal court on it.

11             THE COURT:  They say what?  If you have an

12   agreement, such as the principal agreement, and then you have

13   this other agreement, this LSPA agreement, which tells you how

14   to calculate figures that the first policy which talks about

15   you owing the money was due, becomes void because they didn't

16   give you the second agreement.

17             MR. GARDNER:  The policy doesn't become void.  It's

18   almost -- it's somewhat harsh.  They don't want them to void

19   the policy, the insurance is there, the coverage is there.

20   But, again it may be bifurcated, your Honor.  I haven't looked

21   at it enough to really speak to it.  It may be a situation

22   where the original policy is clear enough that they approved

23   the $500,000, that gets them to a million two of a claim,

24   maybe that would survive.  But the collateral issue, that

25   refers only to the LSPA as to how to calculate, it may not be

PREMOTION CONFERENCE

1   able to be enforced.

2          THE COURT:  Define for me the collateral issue.

3          MR. GARDNER:  That is that because they are paying

4   and obligated for the initial 500 deductible, I don't know if

5   it's called a deductible.  The agreement says they are allowed

6   to ask for going forward collateral for anticipated expenses

7   under that.  Those costs haven't occurred yet.  This

8   one-point-almost $4 million figure is they want collateral for

9   potential claims in the future.  That is part of their

10  litigation, I think the largest part of their litigation.

11         MR. FELAZZO:  If I may address your question about

12  the way other courts have handled this type of question where

13  there is the side agreement.  My understanding from the cases

14  I've looked at, is typically what the policy holder does is

15  say to the insurer, you cannot recover under the side

16  agreement but the insurer is not precluded to recover under

17  the policy.

18         There is a case in the Southern District of New York

19  right now pending where, I believe Sky cited to it in their

20  letter, where the insurers are saying we only have to pay what

21  is due under the policy, we don't have to pay what is due

22  under the side agreement.

23         Our case is saying we're only looking for what is

24  under the policy.  The policy says you're entitled to

25  collateral.  The policy says you have a $500,000 deductible,

PREMOTION CONFERENCE

1   that's how we are basing our claims on that.

2           MR. GARDNER:  This is clearly an issue, if I might,

3   that you're going to have to look at, whether it's now or part

4   of summary judgment.  I think, taking one deposition, we're

5   talking about one deposition of them, the discovery is very

6   limited that we're seeking on it.  Maybe some document

7   discovery, there is not a whole host of discovery, then

8   putting the issue to you.

9           THE COURT:  How much discovery do you want on it?

10          MR. GARDNER:  My thought is one deposition and some

11  documents.

12          THE COURT:  What documents?

13          MR. GARDNER:  Whatever other documents.  Basically

14  the documents as to how they are calculating the collateral

15  the back-up as to how they are getting the numbers.

16          THE COURT:  Who's deposition do you want?

17          MR. GARDNER:  Somebody with knowledge of LSPA and

18  the interplay with the agreement.  For example, they won't

19  issue the Arch policy for workers' comp if a company doesn't

20  sign the LSPA.

21          THE COURT:  Was this a witness who would be subject

22  to cross-examination on other issues?  Somebody who would have

23  to come any way?

24          MR. GARDNER:  I imagine so, it would be about

25  workers' comp.

PREMOTION CONFERENCE

1          THE COURT:  Where are you in discovery?  Do you just

2  have document demands?

3          MR. FELAZZO:  Arch completed document production.

4  I'm not sure if Sky has or stuff is still coming or not.  Then

5  moving into depositions I think fairly soon actually.

6          THE COURT:  Have you sought discovery on this

7  material so far?

8          MR. GARDNER:  Yes, your Honor.  The discovery --

9          THE COURT:  Have you answered the discovery?  Have

10  you provided documents on it?

11          MR. FELAZZO:  We provided documents, for example, on

12  the collateral calculations.  We have objected on the filing

13  of the LSPA or the not filing of the LSPA, about internal

14  conversations about whether the LSPA needed to be filed or

15  not.  We objected to the demands on the basis of not relevant.

16  And some others about overdraft, things like that.

17          THE COURT:  Can't you answer the question whether

18  the document was filed or not?  Why is that something you

19  can't answer?

20          MR. FELAZZO:  We can advise, your Honor, the

21  document is not filed in New York.

22          They were looking for more than that.  They were

23  looking for internal communications or memorandums about

24  whether or not to file the document.  Whether -- I forget --

25          THE COURT:  Why is that relevant?

PREMOTION CONFERENCE

1        MR. GARDNER:  Your Honor, there is another insurance

2   company that has a similar product, and in discovery -- like

3   an LSPA product.  In discovery it came out.  This is been

4   litigated in California, when I referenced California courts,

5   where it came out that they intentionally did not file it with

6   the state agencies because they knew it would not be approved

7   by the state agencies and that they thought this was a very

8   clever way to avoid the state agency requirements.

9        THE COURT:  What does that mean at the end of the

10  day, so what?

11       MR. GARDNER:  Your Honor, the point is, if it's not

12  filed it's not filed, right?

13       THE COURT:  What difference does it make if they

14  didn't do it.  If the issue is was it filed or it wasn't

15  filed -- I take it you stated here today it wasn't filed in

16  New York, right?

17       MR. FELAZZO:  Yes, your Honor.

18       MR. GARDNER:  This is the first we've heard that.

19       THE COURT:  I love to bring people together so we

20  can chat.

21       MR. GARDNER:  To the extent that it could be a

22  factor in the Court's determination --

23       THE COURT:  You know now.  In response to anything,

24  you know that it hasn't been filed.  Does that essentially

25  give you everything you need to know to respond to the motion?

Rivka Teich CSR, RPR, RMR, FCRR
Official Court Reporter

PREMOTION CONFERENCE

1          MR. GARDNER:  I think if -- there is the

2   coordination of the two documents, that might be a factual

3   issue for the Court.  And the fact that one document won't be

4   entered without the other.

5          THE COURT:  You have copies of both documents?

6          MR. GARDNER:  I do.  But just an Arch policy that

7   they won't offer the workers' comp policy without the LSPA,

8   would be a factor.

9          If counsel is willing to stipulate that they would

10  not agree to the workers' comp policy without the LSPA, that

11  would be resolved now, one factual issue.

12         And then the calculation of the collateral.  Counsel

13  actually puts in their court papers, no, in our first

14  complaint the collateral was calculated ed pursuant to the

15  LSPA, here is the chart, very precise.  And then in response

16  here, they say, no, we didn't calculate pursuant to LSPA, it

17  was an independent calculation.

18         That's difficult to see.  I should be able to ask

19  how those are calculated, whether pursuant to the LSPA form.

20         MR. GARDNER:  I think we're delaying the case by

21  doing that.  We're creating two sets of motions instead of

22  one.  Then we'll have to go through this motion.  Then if

23  we're successful, then do the discovery.  Then still go to a

24  motion for summary judgment.

25         And, Judge, these are affirmative defenses.  The

PREMOTION CONFERENCE

1    burden is extremely high on plaintiff's counsel to take out

2    affirmative defense at this stage in the case, especially when

3    their first complaint was based on the LSPA almost entirely.

4              MR. FELAZZO:  Your Honor, we think we'll be able to

5    meet that burden in the briefing.  We think it's a fairly

6    straight-forward briefing.

7              THE COURT:  I'm not going to preclude you from

8    raising the issue ahead of trial, I think you're entitled to

9    do that.  Generally parties are entitled to make motions.  But

10   I think the Court can regulate the timing of the motions.

11             I would direct that you complete the limited

12   discovery on this issue, which counsel has stated here today,

13   and then include it in the summary judgment motion.  Thank

14   you.

15             (Whereupon, the matter was concluded.)

16                   *     *     *     *     *

17   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

18

19   Rivka Teich, CSR RPR RMR FCRR
     Official Court Reporter
20   Eastern District of New York

21

22

23

24

25