UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ARCH INSURANCE COMPANY, ARCH
INDEMNITY INSURANCE COMPANY,

                            Plaintiffs,                **REPORT AND RECOMMENDATION**
                                                **17 CV 2829 (CBA)(LB)**

      -against-

SKY MATERIALS CORP.,

                            Defendant.
--------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

Plaintiffs, Arch Insurance Company ("AIC") and Arch Indemnity Insurance Company ("AIIC") (collectively, "Arch" or "plaintiffs"), brought this breach of contract action against defendant, Sky Materials Corp. ("Sky" or "defendant"), pursuant to 28 U.S.C. §1332, based on diversity of citizenship. Plaintiffs issued insurance policies to defendant and allege that defendant accepted the benefits of the policies but breached its contractual obligations to pay amounts due in connection with the policies.

This case was actively litigated by Sky until defendant's counsel moved to withdraw. The Court granted a motion by defendant's counsel to withdraw, ECF No. 68, and ordered defendant Sky to appear through new counsel. Defendant requested, and the Court granted, an extension of time for defendant to appear through new counsel. ECF No. 72. When months passed and no new counsel filed an appearance on behalf of defendant, plaintiffs filed the instant motion for a default judgment against defendant. ECF No. 80.

The Honorable Carol B. Amon referred plaintiffs' motion to me for a Report and Recommendation. For the reasons stated herein, it is respectfully recommended that defendant's

answer to plaintiffs' complaint as well as its counterclaims should be stricken and plaintiffs' motion for a default judgment should be granted.

## BACKGROUND[1]

AIIC issued a workers' compensation insurance policy to defendant, effective April 20, 2015 to April 20, 2016. ECF No. 37, First Amended Complaint ("FAC"), at ¶ 11. Pursuant to the terms of the policy, Sky agreed that it would reimburse AIIC for amounts paid on claims within Sky's $500,000 per-claim deductible, and that it would pay AIIC an allocated loss adjustment expense within the deductible for any claim, proceeding, or suit defended by AIIC. Id. at ¶¶ 12–13. Sky further agreed to provide Arch with collateral to secure its obligation to pay amounts within the deductible. Id. at ¶ 16. AIIC has paid approximately $1.6 million for claims filed under the policy within Sky's deductible and Sky is required to provide additional collateral of $1,396,749 to secure its obligation. Id. at ¶ 17. AIIC has demanded that Sky reimburse it for amounts paid within the deductible and provide AIIC with the additional collateral. Id. at ¶¶ 15, 18. To date, defendant has not responded to AIIC's demand. Id. at ¶ 20.

The initial premium AIIC charged defendants for the workers' compensation policy was determined based on an estimate. Id. at ¶ 25. The policy provides that Sky would keep records and information in order to calculate the actual premium, and that Sky would allow AIIC to audit its books and records to adjust the final premium due based on the audit. Id. at ¶¶ 25–28. If the final premium was greater than the estimate, Sky agreed to pay AIIC the balance. Id. at ¶ 25. While

---

[1] The facts are drawn from the uncontested allegations in plaintiffs' First Amended Complaint, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

AIIC repeatedly requested to conduct the audit in accordance with the policy, Sky did not allow AIIC access to its books and records in relation to the workers' compensation policy. Id. at ¶¶ 30–32.

AIC issued a commercial auto insurance policy to Sky, effective February 18, 2016. Id. at ¶ 35. AIC canceled the auto insurance policy, effective May 11, 2016, soon after it learned that Sky and its President, Michael Cholowsky, had been indicted for Insurance Fraud in the First and Second Degrees, as well as for Offering a False Instrument for Filing in the First Degree, for concealing information in connection with workers' compensation insurance issued by the New York State Insurance Fund. Id. at ¶¶ 36–37. As with the workers' compensation policy, the premium for the auto insurance policy was originally set based on estimated exposure and defendant agreed to let AIC audit its records to determine the final premium due based actual exposure. Id. at ¶¶ 38–41. In contrast to its actions in connection to the workers' compensation policy, defendant did allow AIC to audit its records related to the auto insurance policy. Id. at ¶ 42. AIC determined that, crediting the estimated premium paid against the final premium assessed, defendants owe AIC a balance of $14,238. Id. at ¶ 43. Sky has not paid the balance owed, in breach of its obligations under the policy. Id. at ¶ 44.

## PROCEDURAL HISTORY

Plaintiffs commenced this action against defendant on May 9, 2017. ECF No. 1. Defendant filed its answer, with counterclaims, on July 25, 2017. ECF No. 9. On October 30, 2017, at plaintiffs' request, ECF No. 18, the Court held a pre-motion conference. Per the Court's October 30, 2017 Order, defendant filed its amended answer to the complaint and amended counterclaims. Plaintiffs moved to dismiss defendant's amended counterclaims and the Court ultimately upheld

defendant's third, fourth, and fifth counterclaims. The Court reserved judgment on defendant's first and second counterclaims. Judge Amon directed the parties to schedule a settlement conference before me. See June 28, 2018 Order.

On August 1, 2018, I held a settlement conference; however, Michael Cholowsky, the President of Sky, failed to appear for the conference despite defendant's representation to the Court that Mr. Cholowsky would attend the settlement conference. See Aug. 1, 2018 Order. As a result, no meaningful discussions regarding settlement occurred. I ordered the parties to complete all fact discovery by December 21, 2018. See Sept. 13, 2018 Order.

On October 26, 2018, plaintiffs filed a First Amended Complaint, ECF No. 37, and on November 9, 2018, defendant filed its answer to the First Amended Complaint with amended counterclaims. ECF No. 38. Defendant filed an amended answer to the First Amended Complaint and amended counterclaims on November 29, 2018. ECF No. 39. The parties jointly requested, and the Court granted, an extension of the fact discovery deadline until March 21, 2019. ECF No. 41. On January 28, 2019, Judge Amon held a pre-motion conference for plaintiffs' anticipated motion to strike certain of defendant's defenses.

The Court held a discovery conference with the parties on March 26, 2019, granting in part and denying in part the parties' respective requests to compel the production of certain documents, and extending the deadline for the parties to complete all fact discovery to May 15, 2019. See Mar. 26, 2019 Order. Defendant objected to my Order and moved for Judge Amon to set aside and modify the order. ECF No. 55.

The parties requested, ECF No. 59, and the Court granted, a fifth extension of the discovery deadline for the limited purpose of providing additional time to review written discovery prior to the deposition of defendant's 30(b)(6) witnesses. See May 13, 2019 Order. Defendant voluntarily

4

dismissed the second counterclaim asserted in its Amended Counterclaims, ECF No. 39. ECF No. 62.

On May 13, 2019, defendant requested a pre-motion conference for its anticipated motion to compel Gallagher Bassett Services, Inc., a non-party independent claims adjuster, to produce documents and to appear for a deposition. ECF No. 61. Plaintiffs opposed defendant's motion for a pre-motion conference, ECF No. 64, and on June 5, 2019, the Court denied defendant's request, finding that Sky had not demonstrated the requisite diligence to warrant an exception to the May 15, 2019 fact discovery deadline. ECF No. 65. On November 19, 2019 Judge Amon denied defendant's motion to set aside my March 26, 2019 discovery order. ECF No. 66.

The parties requested, and the Court granted, a final extension, until January 18, 2020, to complete depositions of plaintiffs' 30(b)(6) witnesses, due to scheduling conflicts. See Dec. 6, 2019 Order.

On January 6, 2020, defendant's then-counsel, Cole Schotz P.C., requested to withdraw as counsel, reporting that Sky had refused to pay its legal fees and currently owed the firm a substantial amount. ECF No. 69. The Court ordered counsel and Mr. Cholowsky, the owner of Sky to appear for a status conference on January 30, 2020. Mr. Cholowsky again failed to appear, in violation of the Court's Order. The Court granted counsel's motion to withdraw and ordered Sky to appear through new counsel by February 28, 2020. See Jan. 7, 2020 Order. Defendant requested, and the Court granted, an extension of time, until March 13, 2020, for Sky to appear through new counsel. ECF No. 73. Sky failed to retain new counsel and did not request any further extension of time.

On March 26, 2020, plaintiffs requested a pre-motion conference for their anticipated motion to strike defendant's answer and counterclaims, hold defendant in default, and enter a

default judgment, ECF No. 76, and on March 30, 2020, the Court So Ordered plaintiffs' proposed briefing schedule. On March 31, 2020, plaintiffs filed proof of service of the Notice of Motion, Memorandum of Law in Support of Plaintiffs' Motion for a Default Judgment, and its attached exhibits and declarations, on defendant. ECF No. 79. On June 11, 2020, plaintiffs filed their motion. ECF No. 80. Defendant has failed to respond to plaintiffs' motion.

Plaintiffs move for a default judgment against defendants pursuant to Rule 55. ECF No. 39. Plaintiffs' motion requests that the Court (1) strike defendant's Amended Answer, dismiss defendant's Amended Counterclaims, and direct the Clerk of Court to enter defendant's default; (2) enter a default judgment against defendant; (3) award plaintiffs compensatory damages in the amount of $1,600,722.06 to reimburse plaintiffs for amounts paid to defendant under the workers' compensation policy and $14,238 for the amount owed as result of the audit conducted in connection with the auto insurance policy, plus prejudgment interest; (4) require Sky to provide Arch with $1,396,749 in collateral pursuant to the workers' compensation policy, and; (5) grant plaintiffs declaratory relief, requiring Sky to reimburse Arch for benefits, damages, and allocated loss adjustment it may pay in the future and requiring Sky to allow Arch access to its workers' compensation records to conduct an audit.

## DISCUSSION

### I.    Defendant's Answer and Counterclaims

Pursuant to Federal Rule of Civil Procedure 16(f) and 37(b), "[a] court may impose a range of sanctions on a party which fails to appear at conferences or to comply with scheduling and other pretrial orders including, among other things, striking pleadings and rendering a default judgment." Trustees of the Paper Products, Miscellaneous Chauffers, Warehousemen & Helpers Union Local

27 Welfare Trust Fund & Pension Fund v. J & J Int'l Logistics, Corp., No. 12-CV-1475 (ILG)(VMS), 2013 WL 5532710, at *2 (E.D.N.Y. Oct. 4, 2013) (citing Fed. R. Civ. P. 16(1)(A)-(C); 37(b)(2)(A)(vi)). The Court may enter a default judgment when the disobedient party has failed to comply with a court order due to willfulness, bad faith, or any fault, including gross negligence. Trustees of the Paper Products, 2013 WL 5532710, at *2 (citing Valentine v. Museum of Modern Art, 29 F.3d 47, 49 (2d Cir. 1994); Cine Forty-Second St. Theater Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979)). When considering the imposition of such sanctions, the Court considers: (1) the party's history of noncompliance; (2) the effectiveness of lesser sanctions; (3) whether a warning has been issued regarding imposition of sanctions; and (4) whether imposing lesser sanctions would prejudice the moving party. Stirrat v. Ace Audio/Visual, Inc., No. 02-CV-2842, 2004 WL 2212096, at *2 (E.D.N.Y. Sept. 24, 2004) (citing American Cash Card Corp. v. AT&T Corp., 184 F.R.D. 521, 524 (S.D.N.Y. 1999), aff'd, 210 F.3d 354 (2d Cir. 2000)); see also 2W Prod. Corp v. Y&P Wholesale, Inc., No. 07-CV-0423, 2009 WL 29311, at *3 (E.D.N.Y. Jan. 5, 2009) (applying the four factors and finding that the likelihood of defendant's future noncompliance with court orders warranted the sanction of striking defendant's answer and granting a default judgment).

Where a corporate defendant has been ordered to retain counsel and fails to do so, striking a defendant's answer, including its counterclaims, is an appropriate sanction. Eagle Assocs. v. Bank of Montreal (2d Cir. 1991) 926 F.2d 1305, 1306 (affirming the district court's entry of default judgment and dismissal of cross- and counter-claims asserted by a corporate defendant without counsel); see also, Hounddog Productions, L.L.C. v. Empire Film Group, Inc., 767 F.Supp.2d 480, 481 (S.D.N.Y. Mar. 2, 2011) (striking corporate defendant's answer and granting a default judgment where the corporate defendant failed to appear through new counsel); Pert 35, Inc. v.

Amari Aviation Ltd., No. 09-CV-0448, 2010 WL 1257949, at *3 (Report and Recommendation), adopted by 2010 WL 1257950 (N.D.N.Y Mar. 24, 2010) (entering default judgment and striking the answer and counterclaims of the corporate defendant who failed to appear by counsel); Berdini v. Nova Sec. Grp., No. 13-CV-5672, 2015 WL 5540735, at *11-13 (E.D.N.Y Sept. 2, 2015) (Report and Recommendation), adopted by 2015 WL 5541233 (E.D.N.Y Sept. 18, 2015) (striking a corporate defendant's answer because it "failed to comply with the Court's Order to obtain counsel"); Northfield Insurance Company v. Mannara Contracting Corp., No. 18-CV-6447, 2019 WL 5874063, at *1 (E.D.N.Y. Aug. 22, 2019) (Report and Recommendation), adopted by 2019 WL 4291652, (E.D.N.Y. Sept. 11, 2019) (striking corporate defendant's answer and imposing default as a sanction for ignoring the Court's order to appear through new counsel).

Here, defendant has failed to comply with the Court's Order to obtain new counsel and has had ample notice of the consequences of its noncompliance. Plaintiffs filed proof of service of the Court's So Ordered briefing schedule for the instant motion, directing defendant to file its opposition to plaintiffs' motion for default by May 21, 2020. Plaintiffs also filed proof of service on defendant of their motion to strike defendant's answer and counterclaims and for default. ECF No. 78. Despite notice that a default may be entered against it, defendant has not appeared, communicated with the Court, or otherwise attempted to defend this action. "Under the circumstances of this case, issuing further orders or imposing lesser sanctions would serve no purpose, and would prejudice the Plaintiffs." 287 Franklin Ave. Residents' Ass'n v. Meisels, No. 11-CV-0976, 2012 WL 4442625, at *3 (E.D.N.Y. Aug. 27, 2012) (Report and Recommendation) adopted by 2012 WL 4447619 (E.D.N.Y. Sept. 25, 2012) (citing Stirrat, 2004 WL 2212096) ("a failure to grant dispositive relief would likely leave the case pending for an indefinite time")). Defendant aggressively litigated this case until its counsel withdrew. Despite being given notice

and an opportunity to retain new counsel, defendant has failed to appear by counsel. As defendant's conduct is willful, defendant's Amended Answer and Counterclaims should be stricken by the Court as the only appropriate sanction.

## II.    Entry of Default

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining a judgment against a defaulting party. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2).

The failure of a corporation to obtain counsel constitutes a failure to defend because corporations cannot proceed *pro se* in federal court. See Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel); Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (same); Shapiro, Bernstein & Co. v. Conf'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"). "Since a corporation's failure to retain counsel results in a failure to 'otherwise defend,' it is appropriate to enter a default against a corporation which has failed to comply with a court order to retain counsel." Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 336 (2d Cir. 1986) (finding that there was "no question" that default was properly entered where corporate defendant failed to comply with the court's order to obtain new counsel); Grace v. Bank Leumi Tr. Co. of NY, 443 F.3d 180, 192 (2d Cir. 2006) (quoting SEC v. Research Automation Corp., 521 F.2d 585

(2d Cir. 1975)) ("where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55, F[ed]. R. Civ. P.")

Here, it is indisputable that Sky is in default. When Sky's counsel withdrew, defendant requested, and the Court granted, an extension of time for Sky to retain new counsel until March 13, 2020. Sky failed to retain new counsel by that date and did not request any further extension. Indeed, as of the date of this Report, over a year has passed since counsel first informed the Court of his intention to withdraw and over ten months have passed since defendant has communicated with the Court with regard to this action in any manner. Thus, the Court concludes that, after nearly three years of litigation, defendant has "abdicated [its] responsibilities in this [action]." Trustees of the Paper Products, 2013 WL 5532710, at *2. Accordingly, the Clerk of Court should be directed to enter a default against Sky, pursuant to Rule 55(a).

## III.    Default Judgment

### A.  Legal Standard

Although the Clerk's entry of default under Rule 55(a) generally precedes a motion for a default judgment under Fed. R. Civ. P. 55(b), the "[r]igid adherence to these rules… must be balanced against the need for efficient administration of justice." Hirsch v. Innovation Int'l, Inc., No. 91-CV-4130, 1992 WL 316143, at *l-2 (S.D.N.Y. Oct. 19, 1992) (citations omitted) (treating motion as a request for entry of default as well as for a default judgment); see Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981) (calling the failure to move for entry of default a "largely technical" omission; RLI Ins. Co. v. May Constr. Co., No. 09-CV-7415, 2011 WL 1197937, at *9 (S.D.N.Y. Mar. 21, 2011) ("to require the plaintiff to file for a certificate of default would only delay resolution of the motion and would not further safeguard the defendants' rights.").

The Court considers the merits of plaintiffs' motion for a default judgment in the interest of the efficient administration of justice. Defendant was served with plaintiffs' motion and thus has adequate notice of the consequences of its default. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc., 699 F.3d 230, 233 (2d Cir. 2012) (holding that the decision to grant a motion for a default judgment is left to the "sound discretion of the District Court") (quoting Finkel v. Romanowicz, 577 F.3d 79, 88 (2d Cir. 2009)); Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999) (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)) ("The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.") (internal quotation marks omitted).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp., 10 F.3d 95–96. "Plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")). "It remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases).

When determining whether to grant a default judgment, the Court considers the following factors: (1) whether defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer

as a result of the denial of the motion for default judgment. <u>Krevat v. Burgers to Go, Inc.</u>, No. 13-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing <u>Pecarsky v. Galaxiworld.com, Ltd.</u>, 249 F.3d 167, 170-71 (2d Cir. 2001)).

First, as discussed above, Sky's conduct is willful. <u>See First Tech. Capital, Inc. v. Airborne, Inc.</u>, 378 F. Supp. 3d 212, 218 (W.D.N.Y. 2019) (finding that defendant's failure to appear by counsel after being ordered to do so, "sufficiently establishes willfulness and favors granting Plaintiff's motion."). Second, because Sky is in default, the well-pleaded factual allegations set forth in plaintiffs' complaint concerning liability are deemed true. As discussed below, in subsections II.B and II.C, the well-pleaded factual allegations in the First Amended Complaint establish Sky's liability on each of plaintiffs' claims. Third, plaintiffs will be prejudiced if they are not granted a default judgment because they have no other means of recovering the losses sustained as a result of Sky's breach of the policy agreements. <u>See Chiquita Fresh N. Am., LLC v. Long Island Banana Corp.</u>, No. 14-982, 2018 WL 1786991, at *9 (E.D.N.Y. Feb. 28, 2018) (Report and Recommendation), adopted by 293 F. Supp. 3d 305 (E.D.N.Y 2018).

## B. Plaintiffs' Claims Under the Workers' Compensation Policy

### (1) Breach of Contract

Plaintiffs bring three claims based on defendant's failure to perform under the terms of the workers' compensation policy. An insurance policy is a contract and is "interpreted according to the rules of contract interpretation." <u>SCW West LLC v. Westport Ins. Corp.</u>, 856 F. Supp. 2d 514, 524 (E.D.N.Y. 2012) (citation omitted). Under New York law,[2] to recover for a breach of contract,

---

[2] Plaintiffs are both corporations organized and existing under the laws of the State of Missouri with their principal places of business in New Jersey. Defendant is a New York corporation with its principal place of business in New York. The policies in question do not declare whether the law of any particular state applies to disputes arising under the policies, thus leaving a choice of law question. <u>See Conn. Indem. Co. v. 21st Century Transport Co., Inc.</u>, 186 F. Supp. 2d 264, 269 (E.D.N.Y. 2002). Because jurisdiction is

a plaintiff must establish "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props. S.R.L. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 53 (2d Cir. 2011).

Plaintiffs' first claim asserts that defendant breached the workers' compensation policy by failing to reimburse plaintiffs for amounts paid on claims within the $500,000 deductible[3] and by failing to provide collateral[4] to secure defendant's obligation to pay amounts within the deductible. See FAC at ¶¶ 11–20. The well-pleaded allegations in the FAC and plaintiffs' instant motion establish defendant's liability for breach of contract. The parties entered a contract that required plaintiffs to issue the workers' compensation policy and provide coverage to defendant. Plaintiffs performed under the contract by covering defendant's claims under the policy and defendant breached the contract by failing to reimburse Arch for amounts paid on claims within the $500,000

_____

based on diversity of the parties, the choice of law rules of the forum state apply. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); GlobalNet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006). New York choice of law analysis employs a "center of gravity" approach for contract disputes, which, for an insurance contract, is "generally the state where the insured risk is located." Liberty Mut. Ins. Co. v. Fairbanks Co., 170 F. Supp. 3d 634, 642 (S.D.N.Y. 2016). Where "the risks insured are spread throughout multiple states, the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk and is the controlling factor in the analysis." Fireman's Fund Ins. Co. v. Great Am. Ins. Co., 10 F. Supp. 3d 460, 496 (S.D.N.Y. 2014). As defendant is domiciled in New York, New York law controls.

[3] The relevant portion of the policy reads, "[Arch] will pay on first dollar basis and [Sky] will reimburse [Arch] for the payments [Arch] make[s] on [Sky's] behalf for benefits under Part One – Workers Compensation Insurance or damages under Part Two – Employers Liability insurance or benefits under Part Three – Other States Insurance up to the following deductible amounts: a) $500,000 each accident for benefits or damages because of bodily injury, or b) $500,000 each employee for benefits or damages because of bodily injury by disease." ECF No. 80-8, Exhibit 5 - Workers' Compensation Policy ("Workers' Compensation Policy"), at p. SKY 775.

[4] With regard to the obligation to secure payments through collateral, the policy states, "If [Arch] require[s] collateral or other security to secure deductible amounts and other obligations under this Endorsement, [Sky] shall provide such collateral or other security in an amount and form as [Arch may determine]." Workers' Compensation Policy at p. SKY 776.

per-claim deductible and by failing to provide additional collateral, per the contract's requirements. As a result, plaintiffs have suffered damages in the amount of unreimbursed payments within the deductible and additional collateral. See FAC at ¶¶ 11–15, 19–20. Accordingly, I find that Sky is liable to Arch for breach of contract under the workers' compensation policy, and plaintiffs' motion on the First Claim should be granted.

### (2) Declaratory Relief

Plaintiffs' Second and Third Claims seek declaratory relief. In addition to damages and costs, courts are empowered to grant declaratory relief following default. See In re Orion Pictures Corp., 4 F.3d 1095, 1100 (2d Cir. 1993) ("A district court has broad discretion to decide whether to render a declaratory judgment."); Cont'l Ins. Co. v. Huff Enters. Inc., No. 07-CV-3821, 2009 WL 3756630, at *4 (E.D.N.Y. Nov. 6, 2009) ("Were declaratory relief categorically unavailable in default cases, a defending party could prevent a plaintiff from obtaining a declaration simply by not showing up in court."). However, for a federal court to enter a declaratory judgment, there must be "a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201(a). To determine whether such a controversy exists, the Second Circuit has instructed district courts to ask if a declaratory judgment will serve a useful purpose in clarifying or settling the legal issues involved and would finalize the controversy and offer relief from uncertainty. Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d. Cir. 2005). A declaratory judgment is an appropriate form of relief on a motion for a default judgment only where the movant "establish[es] a right to a declaration against such a defendant." Cont'l Ins. Co., 2009 WL 3756630, at *3.

The fact that "liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." Assoc. Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 35 (2d

14

Cir. 1992). Courts should consider "the practical likelihood that the contingencies will occur." Id. Where the contingent event upon which the controversy rests is unlikely to occur, the controversy is not of "sufficient immediacy and reality" and a declaratory judgment may not be issued. The Second Circuit has recognized that litigation over insurance coverage "has become the paradigm for asserting jurisdiction despite 'future contingencies that will determine whether a controversy ever actually becomes real.'" Id. (citations omitted). Still, there are some insurance cases that turn on future contingencies exceeding the bounds of a practical likelihood of occurrence. For example, in an insurance case where an excess insurer sought declaratory judgment, absolving the company of its obligations to the insured, the Second Circuit found "there was no practical likelihood that [defendant's] liability would reach the layers of its excess insurance." Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp., 90 F.3d 671, 675 (2d Cir. 1996) (dismissing the declaratory judgment action because there was no justiciable controversy).

### i.    Defendant's Duty to Reimburse for Future Amounts to be Paid

Plaintiffs' Second Claim seeks a declaration that defendant is required to reimburse plaintiffs for amounts it pays in the future for benefits, damages, and/or allocated loss adjustment expenses within the deductible of the workers' compensation policy. A declaratory judgment on this claim will settle an outstanding legal issue and offer relief from uncertainty. Further, plaintiffs have shown a practical likelihood that the contingency of being called upon to indemnify defendant under the policy will occur. There are three claims under the policy that are currently open and within the $500,000 per-claim deductible. See ECF No. 80-3, Exhibit 1 – Loss Run ("Loss Run").[5] Unlike insurance cases where courts have found the future controversy to be too speculative and

---

[5] The three open claims are identified as: 006296-00008-WC-01, 006296-00015-WC-01, and 006296-00023-WC-01. See Loss Run.

have denied declaratory relief, see Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (finding no actual controversy exists with regard to potential, unasserted, or unfiled third party claims), these three open claims demonstrate a practical likelihood of a real future controversy. As it is reasonably likely that Arch may be required to pay benefits on these three open claims, I recommend that plaintiffs' request for declaratory relief on the Second Claim should be granted.

### ii.    Defendant's Duty Regarding the Audit of Requested Records

Plaintiffs' Third Claim asserts that defendant breached the workers' compensation policy by failing to allow Arch to audit its records in order to determine the final premium due based on actual payroll information during the period. The well-pleaded allegations in the FAC, as supplemented by the instant motion, establish plaintiffs' right to declaratory relief on this claim. First, the relevant provision of the contract provides that:

> The premium shown on the Information Page, schedules and endorsements is an estimate. The Final premium will be determined after this policy ends by using the actual, not the estimated, premium basis […]. If the final premium is more than the premium [paid], [Sky] must pay [Arch] the balance.

Workers' Compensation Policy at p. SKY 773. The policy further provides that "[Sky] will let [Arch] examine and audit all [Sky's] records that relate to this policy." Id. Plaintiffs have performed under the contract by covering claims under that policy and have repeatedly requested that defendant allow them to conduct an audit in accordance with the contract's terms. Defendant has failed to permit plaintiffs to conduct the audit, preventing plaintiffs from determining the final premium due. A declaratory judgment regarding this matter will settle the outstanding legal issue and offer relief from uncertainty. Accordingly, I recommend that plaintiffs' Third Claim for

declaratory relief should be granted and defendant should be required to produce the necessary records for plaintiffs' audit and to pay any additional premium due as a result of the audit.

## C. Plaintiffs' Claim Under the Auto Insurance Policy

Plaintiffs' Fourth Claim asserts that defendant breached the automobile insurance policy. See FAC at ¶¶ 34–45. Returning to the four elements that a plaintiff must establish to recover for breach of contract under New York law, plaintiffs have shown that the parties entered a contract that required plaintiffs to issue the auto insurance policy and provide coverage. Under that policy, defendant agreed to pay plaintiffs the additional premium due as a result of the audit in connection with that policy.[6] See Id. at ¶¶ 35, 38–43. Plaintiffs conducted the audit, determined the balance due, and billed defendant accordingly. Defendant breached the contract by failing to pay the additional premium. See Id. at ¶ 44. As a result, plaintiffs have suffered damages in the amount of the additional premium due. Accordingly, plaintiffs' motion for a default judgment with respect to their Fourth Claim, for breach of contract regarding the auto insurance policy, should be granted.


## IV.    Compensatory Damages and Interest

Having found that the FAC establishes defendant's liability for breach of contract, the Court must assess the damages plaintiffs are entitled to recover on their claims. It is well established that a default constitutes an admission of the well-pleaded factual allegations in the complaint, except those relating to damages. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183

---

[6] The relevant portion of the contract reads, "The estimated premium for this Coverage Form is based on the exposures [Sky] told [Arch] [that Sky] would have when this policy began. [Arch] will compute the final premium due when we determine actual exposures. The estimated total premium will be credited against the final premium due and [Sky] will be billed for the balance, if any." ECF No. 80-9, Exhibit 6 - Auto Policy, ("Auto Policy") at p. ARCH-SKY 79.

F.3d 151, 155 (2d Cir. 1999). ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."); see also Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). On a motion for a default judgment, the plaintiff has the burden to prove the amount of damages with "reasonable certainty." Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, 109 F.3d at 111). However, an evidentiary hearing is not required; the Court may rely on detailed affidavits and other documentary evidence to determine damages. Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).

**A. The Workers' Compensation Policy**

As to its First Claim, for the breach of the workers' compensation policy, plaintiffs request $1,600,722.06 in damages. Under New York law, it is well-settled that "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007) (citation omitted). Had defendant not breached the policy, plaintiffs would have been reimbursed for amounts paid on claims under the policy within the deductible. Because the calculation of damages for this claim is relatively simple, I conclude that no hearing is needed.

In support of its request for damages, plaintiffs submit the Loss Run, which demonstrates the total amount paid on each claim and the "Paid Loss Record," ECF No. 80-4, Exhibit 2 – Paid Loss Record, a report showing amounts paid by Arch for each claim. The policy provides a $500,000 per-claim deductible, meaning that for claims in which the total amount paid on a claim is $500,000 or less, defendant is liable for the full amount paid. There are fourteen claims for which

the total amount paid was less than $500,000. There is one claim for which the total amount paid

was more than $500,000.[7] For that claim, Sky is liable to plaintiffs for the difference between

$500,000 and the amount paid by Sky.

The following chart sets forth the amounts defendant owes to plaintiffs:

| Claim No. | Total Amount Paid on Claim | Amount Paid By Sky | Amount Paid By Arch | Amount Owed by Sky |
|---|---|---|---|---|
| 006296000001WC01 | $13,295.32 | $12,258.60 | $1,036.72 | $1,036.72 |
| 006296000002WC01 | $827,625.44 | $118,000.13 | $709,625.31 | $381,999.87 |
| 006296000003WC01 | $4,413.12 | $4,352.67 | $60.45 | $60.45 |
| 006296000006WC01 | $1,335.53 | $250.29 | $1,085.24 | $1,085.24 |
| 006296000007WC01 | $45,329.70 | $24,170.44 | $21,159.26 | $21,159.26 |
| 006296000008WC01 | $435,656.67 | $42,221.90 | $393,434.77 | $393,434.77 |
| 006296000010WC01 | $7,951.61 | $5,829.04 | $2,122.57 | $2,122.57 |
| 006296000011WC01 | $55,718.90 | $15,908.00 | $39,810.90 | $39,810.90 |
| 006296000015WC01 | $313,550.13 | $23,222.64 | $290,327.49 | $290,327.49 |
| 006296000016WC01 | $7,377.94 | $6,646.83 | $731.11 | $731.11 |
| 006296000017WC01 | $3,299.31 | $2,848.73 | $450.58 | $450.58 |
| 006296000018WC01 | $188.99 | $185.20 | $3.79 | $3.79 |
| 006296000020WC01 | $1,739.32 | $1,243.88 | $495.44 | $495.44 |
| 006296000023WC01 | $337,296.00 | $4,216.03 | $333,079.97 | $333,079.97 |
| 006296000025WC01 | $160,645.33 | $25,721.43 | $134,923.90 | $134,923.90 |
| **Total Amount Owed By Sky** | | | | **$1,600,722.06** |

Memorandum of Law, ECF No. 80-1, at p. 13.

Plaintiffs' calculations are correct. On the fifteen claims with outstanding balances, the total

amount owed under the policy is $1,600,722.06. Accordingly, plaintiffs' motion for a default

judgment should be granted in that amount.

Plaintiffs also seek pre-judgment interest on the amount owed under the policy. "Under

New York law, '[a] plaintiff who prevails on a claim for breach of contract is entitled to

---

[7] Claim No. 006296000002WC01 lists a total amount paid of $827,625.44. See Loss Run. Sky paid $118,000.13. Since the deductible is $500,000, Sky owes $500,000 - $118,00.13 = $381,999.87 to plaintiffs on this claim.

prejudgment interest as a matter of right.'" Mktg. Devs., Ltd. v. Genesis Import & Export, Inc., No. 08-CV-3168, 2009 WL 4929419, at *10 (E.D.N.Y. Sep. 30, 2009 (quoting TMS Entm't Ltd. v. Madison Green Entm't Sales, Inc., No. 03-CV-0517, 2005 WL 2063786, at *3 (S.D.N.Y. Aug. 16, 2005)). The rate of pre-judgment interest under New York law is 9 percent per annum. See C.P.L.R. § 5004; Genesis Import & Export, Inc., 2009 WL 4929419, at *10; Mars Elecs. v. U.S.A. Direct, 28 F.Supp.2d 91 (E.D.N.Y. 1998); see also Hunter TBA. Inc. v. Triple V Sales, 250 F.R.D. 116 (E.D.N.Y. 2008). Section 5001(b) of the N.Y. C.P.L.R. provides that pre-judgment interest must generally be computed "from the earliest ascertainable date the cause of action existed."

Plaintiffs submit a letter to defendant dated January 4, 2017 in which they first demanded reimbursement for amounts plaintiffs paid within the deductible by January 18, 2017. See ECF No. 80-13, Exhibit 10 – January 4, 2017 Letter, ("Jan. 4, 2017 Letter"). Although the Court is recommending an award of $1,600,722.06 in compensatory damages for the workers' compensation policy breach, this figure includes charges that occurred after the January 2017 demand. Accordingly, pre-judgment interest should be awarded at 9 percent based on: the $244,655.50 which was due January 19, 2017 to October 26, 2018, the day before the FAC was filed; the $1,166,100 which was due October 27, 2018, the day the FAC was filed, to April 23, 2020, the day before the instant motion was filed; and the $1,600,722.06 due as of April 24, 2020, the day the instant motion was filed, through the date that final judgment is entered.[8]

Pursuant to 28 U.S.C. § 1961(a), litigants are entitled to post-judgment interest on damage awards issued by a district court. Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008). Post-

---

[8] Plaintiffs demanded that defendant reimburse $244,655.50 paid on claims within the deductible by January 18, 2017. Jan. 4, 2017 Letter. On October 27, 2018, the FAC was filed and plaintiffs demanded payment of $1,166,100 which was owed by defendant. See FAC at ¶ 14, ECF No. 37. On April 24, 2020, this motion was served, and plaintiffs demanded $1,600,722.06 which was owed by defendant.

20

judgment interest is established by federal statute and its accrual is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Since Section 1961(a) does not allow "the exercise of judicial discretion in its application," Akermanis v. Sea–Land Serv., Inc., 521 F.Supp. 44, 57 (S.D.N.Y. 1981), rev'd on other grounds, 688 F.2d 898 (2d Cir. 1982), cert. denied, 461 U.S. 927 (1983), plaintiff is entitled to post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961, calculated from the date the district court enters judgment. See also Cappiello v. ICD Publ'ns, Inc., 720 F.3d 109, 112 (2d Cir. 2013) ("[U]nder § 1961, federal district courts must apply the federal rate of post-judgment interest to judgments rendered in diversity actions."); Arch Specialty Ins. Co. v. Kajavi Corp., No. 18-CV-4043, 2019 WL 3719461, at *7 (E.D.N.Y. July 11, 2019) (Report and Recommendation), adopted by Arch Specialty Ins. Co. v. Kajavi Corp., 2019 WL 3717441 (E.D.N.Y., Aug. 7, 2019). Thus, under 28 U.S.C. § 1961(a), plaintiffs are entitled to post-judgment interest, from the date judgment is entered until it is paid.

Lastly, under the workers' compensation policy, plaintiffs also seek $1,396,749 in additional collateral from defendant. Plaintiffs' calculation of the requisite additional collateral, supported by the record, is as follows: the total incurred loss under the policy is $1,367,019 and the estimated developed loss, or incurred loss plus anticipated future amounts to be paid, is $2,366,832. The current amount that has been paid is $470,083 and the current collateral held from Sky is $500,000, leaving a gap of requisite additional collateral of $1,396,749. See Loss Run and ECF No. 80-5, Exhibit 3 - Collateral Calculation, ("Collateral Calc."). Plaintiffs have proffered

sufficient proof that they are entitled to additional collateral under the policy and therefore plaintiffs' motion for a default judgment should be granted in that amount.[9]

### B. Auto Insurance Policy

Having found that the FAC establishes defendant's liability for defendant's breach of the auto insurance contract in Section II.C of this Report, the Court now assesses the amount that plaintiffs are entitled to recover on the claim. For the auto insurance policy breach, plaintiffs request $14,238 in damages. In support of its request for damages, plaintiffs have submitted the Auto Policy Invoice and Premium Audit statement. See ECF No. 80-6, Exhibit 4 – Auto Policy Invoice, ("Auto Policy Invoice"). After Arch conducted the premium audit for the auto insurance policy, Arch determined the final premium left a balance due of $14,238.[10] Had defendant not breached the contract, plaintiffs would have been paid the additional premium. Accordingly, plaintiffs should be awarded $14,238 for defendant's breach of the auto insurance policy.

Plaintiffs are also entitled to recover pre-judgment interest from the date Arch demanded the premium due as a result of the audit, January 18, 2017, to the date a final judgment is entered at a rate of nine percent per annum, as well as post-judgment interest from the date judgment is entered until it is paid under 28 U.S.C. § 1961(a). See Jan. 4, 2017 Letter at p. SKY 0000739.

---

[9] Plaintiffs' Memorandum of Law states that Arch would return any unused collateral to Sky after all claims on the policy are closed. ECF No. 80-1 at n.5.

[10] Sky was billed $81,238 for the auto insurance premium ($72,000 for liability, $9,147 for physical damage, and $91 for surcharge). Arch calculated the adjusted premium to be $95,476 ($84,419 for liability, $10,647 for physical damage, and $410 for surcharge). This leaves a total balance due of $14,238. See Auto Policy Invoice at p. ARCH-SKY 000173 (p. 6).

**CONCLUSION**

Accordingly, I respectfully recommend that plaintiffs' motion should be granted. Defendant's amended answer and amended counterclaims should be stricken, and the Clerk of Court should enter Sky's default. Plaintiffs' motion for a default judgment should be granted and Arch should be awarded: (1) $1,600,722.06 for defendant's breach of contract claim under the workers' compensation policy, together with pre-judgment interest at a rate of nine percent per annum and post-judgment interest from the date judgment is entered until it is paid, (2) $1,396,749 in additional collateral, pursuant to the terms of the workers' compensation policy, (3) $14,238 in damages for defendant's breach of contract claim under the auto insurance policy, together with prejudgment interest at a rate of nine percent per annum and post-judgment interest at the statutory rate from the date judgment is entered until it is paid. I further recommend that plaintiffs' motion for declaratory relief should be granted and defendant should be ordered to reimburse plaintiffs for benefits, damages, and/or allocated loss adjustment expenses it pays in the future within defendant's deductible, per the terms of the workers' compensation policy; and defendant should be ordered to submit to an audit by plaintiffs and defendant shall pay plaintiffs any additional premium due as a result of that audit. Plaintiffs shall serve a copy of this Report on defendant and file proof of service forthwith.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension

of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. <u>Marcella v. Capital Dist. Physicians' Health Plan, Inc.</u>, 293 F.3d 42 (2d Cir. 2002); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989); <u>see</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

SO ORDERED.


                                                   _____/S/_____

                                                   LOIS BLOOM

                                                   United States Magistrate Judge


Dated: January 29, 2021
        Brooklyn, New York

24